IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| **MARY L. BERHOW** | § | **PLAINTIFF** |
| | § | |
| **V.** | § | **1:04CV511LG-RHW** |
| | § | |
| **THE PEOPLES BANK, ET AL.** | § | **DEFENDANTS** |

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S EXPERT JOHN MICHAEL WOODY, SR.

BEFORE THIS COURT is the Motion of Defendants The Peoples Bank and Peoples Financial Corporation to Exclude the Testimony of Plaintiff's Expert John Michael Woody, Sr. [113], filed pursuant to FED. R. EVID. 702 and 403 in the above-captioned cause on June 15, 2005. For the reasons set forth below, the Defendants' motion should be granted.

In their motion to exclude the testimony of Plaintiff's expert, John Michael Woody, Sr., the Defendants argue that Woody's testimony should be excluded under FED. R. EVID. 702 because it is neither relevant nor reliable. According to the Defendants, Woody's testimony is irrelevant because it is not based upon the appropriate standard of care. Defendants contend that the "the Bank should be judged by a professional negligence standard of care that looks at the procedures prevailing in banks similar in size and within the area." (Defs.' Br. in Supp. of Mot. to Exclude Testimony, p. 3, filed June 15, 2005, *citing* MISS. CODE ANN. § 75-3-103(a)(7)). Defendants claim that Woody's testimony is unreliable because Woody's testimony does not include any analysis; does not identify or test any hypothesis; "does not suggest any way in which his views may be falsified." (Defs.' Br., p. 11.) In addition, Defendants contend that Woody's testimony is unreliable because he is not "familiar with the policies and procedures prevailing in th[e] area." (Defs.' Br., p. 11.)

Defendants also contend that Woody's testimony should be excluded under FED. R. EVID. 403 because his testimony is extremely prejudicial. According to the Defendants, Woody evaluated the Bank's policies and procedures against "an ideal standard developed by him based on hindsight–a standard by which the Bank should not be judged." (Defs.' Br., p. 14.) Alternatively, the Defendants request that Woody's testimony be limited to "the standard of care employed by area banks similar in size to The Peoples Bank of Biloxi, Mississippi," as provided in MISS. CODE ANN. § 75-3-103(a)(7).

The Plaintiff contends that Woody's testimony should not be excluded. According to the Plaintiff, the standard of care articulated in MISS. CODE ANN. § 75-3-103(a)(7) does not apply to this case. The Plaintiff contends that the standard is defined in terms of reasonableness in the banking industry, not just in Mississippi or the Biloxi-Gulfport metropolitan area. In addition, the Plaintiff contends that Woody's testimony is relevant because Woody has trained bank examiners in Mississippi "in the area of safety and soundness in their operations and risk assessment not in specific rules and regulations," and because Woody has "read Mississippi banking regulations by reading examinations and their reports and training banking personnel on safety and soundness in banking practices." (Pl.'s Resp. to Defs.' Mot. to Exclude Testimony, p. 5, filed July 5, 2005.) The Plaintiff argues that Woody's testimony is reliable because "[t]he *Daubert* factors have limited applicability to the kind of testimony whose reliability depends heavily on knowledge and experience of the expert." (Pl.'s Resp., p. 6, *citing Skidmore v. Precision Printing and Packaging, Inc.*, 188 F.3d 606, 618 (5th Cir. 1999)).

FED. R. EVID. 702 provides as follows concerning the admissibility of testimony of an

expert witness:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or date, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702.  "Rule 702 assigns to the district judge a gatekeeping role to ensure that scientific testimony is both reliable and relevant." *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999).  The Fifth Circuit has described this Court's gatekeeping function under FED. R. EVID. 702 and *Daubert* as follows:

> . . . [T]he court must ensure the expert uses reliable methods to reach his opinions; and those opinions must be relevant to the facts of the case.  The Supreme Court listed several non-exclusive factors to guide courts in their screening function: whether the proposed evidence or theory "can be (and has been) tested"; whether it "has been subjected to peer review and publication"; whether it has been evaluated in the light of "potential rate[s] of error"; and whether the theory has been accepted in the "relevant scientific community".  *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593-94, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).
>
> The *Daubert* factors remain relevant to the determination of the reliability of expert testimony under Rule 702, as amended.  *See* Fed. R. Evid. 702 advisory committee's note (2000 Amendment).  The 2000 amendments to Rule 702 also reflect the Supreme Court's determination that the reliability analysis must remain flexible: not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant.  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).  Although the *Daubert* analysis is applied to ensure expert witnesses have employed reliable principles and methods in reaching their conclusions, the test does *not* judge the expert conclusions themselves.  *Daubert*, 509 U.S. at 594-95, 113 S.Ct. 2786.

*Guy v. Crown Equipment Corp.*, 394 F.3d 320, 325 (5th Cir. 2004).  The Court may also consider other factors, if relevant, such as "[w]hether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion," and "[w]hether the expert has

3

adequately accounted for obvious alternative explanations." FED. R. EVID. 702 advisory committee's notes (2000 Amendment). "The district court's responsibility 'is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Skidmore v. Precision Printing and Packaging, Inc.*, 188 F.3d 606, 618 (5th Cir. 1999), *quoting Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 1176, 143 L.Ed.2d 238 (1999).

Woody proposes to testify concerning "banking practices, customs, policy and procedures and comparing same to the policies, procedures, customs and practices of The Peoples Bank." (Aff. of Woody, p. 2, dated Dec. 14, 2004, Ex. B, Defs.'s Mot. in Limine, filed June 15, 2005.) Woody opines that the Bank was negligent and grossly negligent, which led to the conduct by Seymour. His opinion was based upon the following actions at the Bank:

> . . . Tellers cashed dozens of checks with forged endorsements without requesting identification or verification in violation of their own general policies and procedures. Loan review never questioned dozens of forged loan documents and forged signatures. The audit department is charged with the first line of defense in assuring truthfulness and accuracy in bank operations. They have failed this responsibility here as indicated by the long term and repeated nature of the fraud. The loan committee either failed to review or inadequately reviewed Seymour's loan portfolio. Loan proceeds were given to Seymour in cash to ostensibly deliver to customers who were most often probably not even in the bank. Such a process of disbursing loan proceeds invites, encourages and supports fraud. Senior management either failed to promulgate or failed to implement policies, procedures and safeguards to assure appropriate check handling procedures, loan processing and/or procedures to monitor loan officers' activities. It was senior management's responsibility to assure safeguards were in place and working effectively in all departments to prevent this exact type of fraud that occurred by an uncontrolled and unchecked member of senior management.
>
> It is my opinion that apparently no one in the bank bothered to compare readily available authentic customer signatures with forged signatures on dozens of checks and loan documents. The security department failed to investigate or inadequately

>   investigated Seymour's lending activities prior to the discovery of the thefts in May
>   2002 including apparently the cashing of over a hundred third party forged checks.

(Aff. of Woody, pp. 3-4, dated Dec. 14, 2004, Ex. B, Defs.'s Mot. in Limine, filed June 15, 2005.)

As the Supreme Court noted in *Kuhmo*, not all of the *Daubert* factors will be applicable in determining whether an expert's proposed testimony is reliable, particularly when an expert's testimony is based upon practical experience.  *First Tenn. Bank Nat'l Ass'n v. Barreto*, 268 F.3d 319, 335 (6th Cir. 2001).  In *Barreto*, the plaintiff contended that the district court improperly admitted the testimony of defendant's expert.  According to the plaintiff, the expert's testimony was unreliable under *Daubert* because his testimony had not been subjected to peer review and had not been tested.  Instead, the expert's testimony was based upon "practical experiences throughout forty years in the banking industry."  *Barreto*, 268 F.3d at 335.  The Sixth Circuit determined that "[o]pinions formed in such a manner do not easily lend themselves to scholarly review or to traditional scientific evaluation." *Barreto*, at 335.  For this reason, the Sixth Circuit held that the *Daubert* factors were not a proper test for reliability under the circumstances in that case.  Likewise, in this case, Woody's proffered testimony is largely based upon his practical experience in the banking industry, and particularly in the area of safety and soundness.  Thus, the *Daubert* factors are not helpful in determining the reliability of his opinion.  The Court must therefore consider other factors in determining the reliability of Woody's testimony.

As noted above, Woody's proffered testimony concerns the banking practices, customs, policies and procedures of The Peoples Bank as compared to the banking practices, customs,

5

policies and procedures of other banks. In his affidavit, Woody stated that no one in loan review questioned the documents forged by Seymour. During Woody's deposition, however, counsel for the Bank asked him if he was aware of any rule, regulation or law that would require loan review to verify signatures on loan documents. Woody responded as follows:

> Only to the – I do not know in specificity. Only to the point of safety and soundness, and if there is a – it depends on the amount of risk you want to take. I say again: The bank could choose to have no loan review. They are going to be criticized; but if they want to take the risk and take the downturn of fostering an environment like this, they do so.

(Woody Depo., 39:23–40:4, dated Nov. 22, 2004, Ex. C, Defs.' Mot. in Limine, filed June 15, 2005.) When later asked whether this requirement is written, he responded as follows:

> It's part of – I don't know of a regulation. It's part of the safety and soundness expectation of regulators with the bank.

(Woody Depo., 41:13-15.) When asked a third time whether there is a rule, regulation or law requiring such verification, he answered as follows:

> Once again, that's left up to the choice of the bank on how much risk it wants to take, as long as it does not promulgate an unsafe and unsound environment.
>
> If all the loans in the bank are fraudulent signatures, then the bank is broke.

(Woody Depo., 52:12-16.) Woody also opined in his affidavit that "[s]enior management either failed to promulgate or failed to implement policies, procedures and safeguards to assure appropriate check handling procedures, loan processing and/or procedures to monitor loan officers' activities." (Aff. of Woody, p. 3.) Counsel for the Bank asked Woody if he was aware of any law, rule or regulation that required senior management to take these precautions. Woody could not identify any such law, rule or regulation. He responded as follows:

> I believe the overriding safety and soundness [require senior management to take these

>precautions]. I mean, it's senior management's responsibility to create an environment that does not foster fraud.

(Woody Depo., 60:20-22.)  Moreover, Woody admitted that he could not recall which, if any, policies and procedures of Mississippi banks he had reviewed.  Based upon this testimony, Woody did not identify any policy or procedure that the Bank violated.  In addition, Woody could not recall reviewing any other Mississippi bank's policies and procedures for comparison with the Peoples Bank's policies and procedures.  For these reasons, the undersigned is of the opinion that Woody's testimony is simply unreliable and would not be helpful to the trier of fact.  Therefore, Woody's testimony and opinion must be excluded.

Even if Woody's opinion were reliable, his opinion would be excluded as irrelevant. Because the Mississippi Uniform Commercial Code applies to the facts in this case, (*Hancock Bank v. Ensenat*, 819 So.2d 3, 9 (Miss. Ct. App. 2001)), MISS. CODE ANN. § 75-3-103(a)(7) defines the applicable standard of care.  It is defined as follows:

>"Ordinary care" in the case of a person engaged in business means observance of reasonable commercial standards, prevailing in the area in which the person is located, with respect to the business in which the person is engaged.

MISS. CODE ANN. § 75-3-103(a)(7).  Thus, for purposes of determining whether the Bank employed reasonable banking standards, its standards and conduct should be compared to similar banks in the metropolitan area of Biloxi, Mississippi, rather than the entire banking industry, as suggested by Berhow.  MISS. CODE ANN. §§ 75-3-103(a)(7); 75-4-103 cmt.; *see also Union Planters Bank, N.A. v. Rogers*, 912 So.2d 116, 123-24 (Miss. 2005), *citing Spacemakers of Am., Inc. v. SunTrust Bank*, 609 S.E.2d 683, 688-89 (2005).  Because Woody's testimony is not limited to reasonable banking standards in the Biloxi, Mississippi area, or even

the state of Mississippi, his testimony is not relevant and is therefore inadmissible.

**IT IS THEREFORE ORDERED AND ADJUDGED,** that for the reasons stated above, the Defendants' Motion to Exclude the Testimony of Plaintiff's Expert John Michael Woody, Sr. [113] should be and is hereby **GRANTED.**

**SO ORDERED AND ADJUDGED** this the 28th day of March, 2006.

*s/ Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE