**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **MARY L. BERHOW** | § | **PLAINTIFF** |
| | § | |
| **V.** | § | **1:04CV511LG-RHW** |
| | § | |
| **THE PEOPLES BANK, ET AL.** | § | **DEFENDANTS** |

**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ON ISSUES OF LAW CONCERNING LIABILITY
AND GRANTING THE MOTION OF DEFENDANTS THE PEOPLES BANK
AND PEOPLES FINANCIAL CORPORATION FOR SUMMARY JUDGMENT**

BEFORE THIS COURT are the Plaintiff's Motion for Partial Summary Judgment on

Issues of Law Concerning Liability [42], filed in the above-captioned cause on December 17,

2004, and the Motion of the Defendants The Peoples Bank and Peoples Financial Corporation

[89], filed in the above-captioned cause on April 25, 2005.  For the reasons set forth below, the

Plaintiff's motion should be denied, and the Defendants' motion should be granted.

FACTS AND PROCEDURAL HISTORY

Defendant Ralph Seymour began his employment at The Peoples Bank in the early

1970s.  From 1998 through early May 2002, Seymour held the position of Vice President and

loan officer.  On May 8, 2002, a customer of Defendant The Peoples Bank inquired about a

discrepancy with a loan account.  Upon review, bank officials noticed some irregularities.

Seymour was the loan officer for the customer's account.  Bank officials questioned Seymour

about the discrepancy and he "promptly confessed that he had been carrying out a scheme to

defraud the Bank for approximately four years."  (Defs.' Br. in Resp. to Pl.'s Mot. for Partial

Summ. J., p. 1, dated Jan. 3, 2005.)  "Seymour's methodology in this scheme was to utilize the

names of existing customers of the Bank to convert and obtain funds for himself from the

Bank." (Defs.' Br., p. 1.)  The Bank conducted a full review and audit of Seymour's loan portfolio which revealed that Seymour had used the names of sixty customers to obtain funds for himself.  One of those sixty customers was the Plaintiff, Mary Berhow.  Upon determining this, the Bank notified Berhow of the transactions.  According to the Bank's investigation and audit, Seymour used Mary Berhow's name to obtain funds beginning on August 13, 1998, and ending on April 19, 2002.  The Bank determined that the total amount Seymour had obtained in Mary Berhow's name was $43,600.  Thus, the Bank credited Berhow's accounts in the amount of $51,789, which included $8,189 in interest.

Seymour was charged with and ultimately entered a guilty plea to Bank Fraud under 18 U.S.C. § 1344.  Seymour was sentenced to 24 months imprisonment and five years of supervised release.  He was also ordered to pay restitution to the Bank in the amount of $376,605.06.

The Plaintiff filed her complaint against the Defendants in this Court on May 5, 2004, alleging federal and state law claims including federal RICO claims pursuant to 18 U.S.C. § 1964, state RICO claims pursuant to MISS. CODE ANN. § 97-43-1, and claims of negligence and gross negligence.  In her motion, the Plaintiff seeks summary judgment on the following issues:

    1.  that the Bank is vicariously liable for compensatory damages caused by Seymour's conduct;

    2.  that the Bank is vicariously liable for punitive damages attributable to the fraud committed by Seymour;

    3.  that mental anguish is an element of compensatory damages to be considered by the jury;

4.  that Miss. Code Ann. § 75-3-420 does not preclude recovery by Berhow;

5.  that the Bank owed Berhow a fiduciary duty;

6.  that the issue of gross negligence of the Bank must go to the jury; and

7.  that Seymour is liable as a matter of law for compensatory and punitive damages.

The Bank seeks judgment as a matter of law on the following issues:

1.  that the Bank is not liable under the doctrine of respondeat superior;

2.  that the Plaintiff is not entitled to recover punitive damages;

3.  that the Plaintiff cannot establish a claim of mental anguish;

4.  that the Plaintiff has been made whole and is therefore not entitled to compensatory damages as provided in MISS. CODE ANN. § 75-3-420;

5.  that the Bank does not owe the Plaintiff a fiduciary duty;

6.  that the Plaintiff's claim of negligent supervision should be dismissed because it is precluded by the Uniform Commercial Code, and because Seymour's acts were not within the scope of his employment; and

7.  that Defendant Peoples Financial Corporation should be dismissed.

Defendant Seymour filed a response to Berhow's motion and denies that she is entitled to compensatory and punitive damages.  According to Seymour, Berhow has been made whole under the Uniform Commercial Code and therefore, she is not entitled to any additional damages.  In addition, he claims that Berhow cannot establish the elements of fraud and therefore she is not entitled to punitive damages.  Lastly, Seymour contends that Berhow has failed to show that she is entitled to an award for mental anguish.

<u>DISCUSSION</u>

FED. R. CIV. P. 56 permits any party to a civil action to move for a summary judgment

3

upon a claim, counterclaim, or cross-claim as to which there is no genuine issue of material fact and upon which the moving party is entitled to prevail as a matter of law.  In effect, Rule 56(c) provides that as a matter of law, upon admitted or established facts, the moving party is entitled to prevail.  Summary judgment "is not a catch penny contrivance to take unwary litigants into its toils and deprive them of a trial, it is a liberal measure, liberally designed for arriving at the truth.  Its purpose is not to cut litigants off from their right of trial by jury if they really have evidence which they will offer on a trial, it is to carefully test this out, in advance of trial by inquiring and determining whether such evidence exists." *Whitaker v. Coleman,* 115 F.2d 305, 307 (5th Cir. 1940).  A party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).  Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted.  *Catrett*, 477 U.S. at 324-25, 106 S.Ct. at 253-54.  The non-moving party may not rest upon mere allegations or denials in its pleadings, but must set forth specific facts showing the existence of a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256-57, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

CLAIMS AGAINST PEOPLES FINANCIAL CORPORATION:

Defendant Peoples Financial Corporation seeks judgment as a matter of law on Berhow's claims of negligence and gross negligence.  According to Peoples Financial, Berhow has failed to produce any evidence "that would support piercing the corporate veil . . . [to] allow liability to attach."  (Defs.' Br. in Supp. of Mot. for Summ. J., p. 21, filed Apr. 25,

4

2005.)

According to Berhow, her claims against Peoples Financial are based upon the fact that the officers and members of the Board of Directors are the same for both Peoples Financial and The Peoples Bank, and that Greg Batia, Vice President of Audit for The Peoples Bank, "reports directly to the audit committee of the bank <u>as</u> <u>well</u> <u>as</u> the audit committee of the holding company." (Pl.'s Resp. Br., p. 13.)   Berhow also claims that Peoples Financial "completely controls" The Peoples Bank. (Pl.'s Resp., p. 13.)  Berhow explains that "[i]f senior management was grossly negligent in supervising Seymour's activities and in maintaining a system which was responsible for four years of criminal conduct going undetected, the senior management responsible is identical for both corporations and vicarious liability attaches to both corporations." (Pl.'s Resp. Br., p. 13, *citing* Prosser, Law of Torts, §§ 216, 219, 231.)  In support of her claims, Berhow provided the deposition testimony of Greg Batia and a list of the officers and Board of Directors of both The Peoples Bank and Peoples Financial.

The law in Mississippi regarding piercing the corporate veil is well established as follows:

> [T]o pierce the veil of a corporation, the party seeking to impose liability on the corporation's shareholders must demonstrate: "(a) some frustration of contractual expectations regarding the party to whom he looked for performance; (b) the flagrant disregard of corporate formalities by the defendant corporation and its principals; (c) a demonstration of fraud or other equivalent misfeasance on the part of the corporate shareholder." *Gray v. Edgewater Landing, Inc.,* 541 So.2d 1044, 1047 (Miss. 1989). Additionally, Mississippi law holds that "two or more corporations are separate and distinct entities although the same individuals are the incorporators of, or own stock, in the several corporations, and although such corporations may have the same persons as officers". *Murdock Acceptance Corp. v. Adcox,* 245 Miss. 151, 163, 138 So.2d 890, 895 (1962).
>
> "[T]he mere fact that one owns all the stock of the other, or substantially all, is not

5

enough to warrant disregard, in the absence of some fraudulent purpose; nor is the fact that there was an opportunity to exercise control. Furthermore the fact that the shareholders of the two corporations are the same is not of itself sufficient to treat the two corporations as one." *Johnson & Higgins of Miss., Inc. v. Comm'r of Ins.,* 321 So.2d 281, 285 (Miss. 1975).

*Castillo v. M.E.K. Const., Inc.*, 741 So.2d 332, 340-41 (Miss. Ct. App. 1999). Berhow has failed to provide any evidence that tends to show a frustration of contractual expectations, a flagrant disregard of corporate formalities, or a demonstration of fraud or some other equivalent misfeasance on the part of Peoples Financial. For this reason, Peoples Financial is entitled to judgment as a matter of law on Berhow's claims.

DOES MISS. CODE ANN. § 75-3-420 APPLY?

The Bank contends that Berhow's claim "falls exclusively under the UCC," and her "remedy is limited to compensatory damages" as provided in MISS. CODE ANN. § 75-3-420. (Defs.' Br. in Supp. of Resp. to Pl.'s Mot. for Partial Summ. J., p. 22.) According to the Bank, the UCC does not allow consequential, special or penal damages. The Bank therefore contends that because it "has fulfilled its sole obligation by making Plaintiff whole," (Defs.' Br. in Supp. of Mot. for Summ. J., p. 14.), Berhow is not entitled to any additional damages.

Berhow contends that § 75-3-420 does not apply in this case because she did not allege conversion as a cause of action. Instead, Berhow contends that her case is based "on fraud, forgery, breach of contract and gross negligence." (Pl.'s Mot. for Partial Summ. J., p. 2, filed Dec. 17, 2004.) She therefore claims that § 75-3-420 does not apply. Berhow also contends that the express terms of MISS. CODE ANN. § 75-3-420 prohibit her from bringing a cause of action for conversion. Berhow therefore seeks summary judgment that compensatory damages in this case are not limited by MISS. CODE ANN. § 75-3-420.

6

MISS. CODE ANN. § 75-3-420, entitled "Conversion of Instrument," provides in

pertinent part as follows:

> (a) The law applicable to conversion of personal property applies to instruments.  An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment.  An action for conversion of an instrument may not be brought by (i) the issuer or acceptor of the instrument or (ii) a payee or indorsee who did not receive delivery of the instrument either directly or through delivery to an agent or a co-payee.

> (b) In an action under subsection (a), the measure of liability is presumed to be the amount payable on the instrument, but recovery may not exceed the amount of the plaintiff's interest in the instrument.

MISS. CODE ANN. § 75-3-420.  In *Hancock Bank v. Ensenat*, 819 So.2d 3 (Miss. Ct. App.

2001), Ensenat asserted claims of "breach of contract, bad faith breach of contract, negligence

and gross negligence and reckless disregard."  *Ensenat*, 819 So.2d at 8.  Because she did not

assert a claim of conversion, Ensenat, like Berhow, claimed that the Uniform Commercial

Code did not apply.  The court, however, disagreed.  The court held as follows:

> . . . [T]he Code governs here over common law forms of action.  Once the checks were presented to the bank for deposit, the 'rights and responsibilities of the parties are determined by reference to the Mississippi Uniform Commercial Code.'

*Ensenat*, at 9, *quoting White v. Hancock Bank*, 477 So.2d 265, 271 (Miss. 1985).  Therefore,

even though Berhow, like the plaintiff in *Ensenat*, did not plead conversion as a cause of

action, MISS. CODE. ANN. § 75-3-420 applies.  In addition, § 75-3-420 displaces Berhow's

common law claims insofar as her common law claims relate to the conversion of the

instruments.  MISS. CODE. ANN. § 75-1-103; *see also Ensenat*, 819 So.2d at 9; *Tatis v. U.S.

Bancorp.*, No. 1:03CV378, 2005 WL 3307345, at *7 (S.D. Ohio Dec. 6, 2005).

Berhow also contends that § 75-3-420 does not apply because she lacks standing to

bring such a claim.  According to Berhow, she never received delivery of the instrument.  For this reason, she claims that § 75-3-420(a)(ii) expressly prohibits her from bringing an action for conversion.  The Court agrees with Berhow.  The statute clearly states that an action for conversion may not be brought by a payee who did not receive delivery of the instrument.  It is undisputed that Berhow did not receive delivery of any of the instruments.  She is therefore precluded from bringing an action for conversion.  MISS. CODE ANN. § 75-3-420(a)(ii); *Olympic Title Ins. Co. v. Fifth Third Bank,* Nos. 19324, 19319, 2002 WL 31398652, at *4 (Ohio Ct. App. Oct. 25, 2002) (payee has no cause of action in conversion under UCC or common law if payee never received delivery of instrument); *see also Miss. Bulk Transport, Inc. v. Union Planters Bank, N.A.*, No. 2:04CV220-D-A, 2005 WL 3240570, at *2 (N.D. Miss. Nov. 30, 2005) (holding that issuer of instrument cannot maintain action for conversion under § 75-3-420(a)(i)).

Even though Berhow is precluded from bringing an action for conversion, she is not without a remedy.  The comment to § 75-3-420 explains as follows:

> . . .  Normally the drawer of a check intends to pay an obligation owed to the payee.  But if the check is never delivered to the payee, the obligation owed to the payee is not affected.  If the check falls into the hands of a thief who obtains payment after forging the signature of the payee as an indorsement, the obligation owed to the payee continues to exist after the thief receives payment.  Since the payee's right to enforce the underlying obligation is unaffected by the fraud of the thief, there is no reason to give any additional remedy to the payee. . . .

MISS. CODE ANN. § 75-3-420 cmt. n.1.  In addition, MISS. CODE ANN. § 75-1-106(a) states that "[t]he remedies provided by this code shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed but neither consequential or special nor penal damages may be had except as specifically provided

8

in this code or by other rule of law." Miss. Code Ann. § 75-1-106(a).  The comment to

§ 75-1-106 explicitly states that "compensatory damages are limited to compensation." Miss.

Code Ann. § 75-1-106 cmt. n.1.  Thus, in this case, Berhow's remedy is to recover on the

"underlying obligation" which is a credit in the amount of the loans, plus interest, obtained by

Seymour in Berhow's name.

        The Bank contends that it has credited Berhow's loan accounts with the amount of

principal and interest wrongfully obtained by Seymour in Berhow's name.  The Bank provided

an affidavit of Greg Batia, Vice President of Audit for The Peoples Bank, who conducted a

review of the loan accounts in Berhow's name.  Based upon his review, he determined that

$43,600.00 in principal had been obtained by Seymour.  In addition, Batia determined that

Berhow was entitled to a credit in the amount of $8,189.00 in interest.  Therefore, based upon

Batia's review, the Bank credited Berhow's loan accounts with a total of $51,789.00.  Based

upon this credit, the Bank contends that Berhow has been made whole.   It appears that Berhow

may dispute that she has been credited with the proper amount.  In her affidavit, she simply

states that she is "unsure of how the amounts which were real and the amounts which were

fictitious were calculated and have asked for an accounting of same in my Complaint."

(Berhow Affid., ¶ 9., Ex. G., Pl.'s Mot. for Partial Summ. J., filed Dec. 17, 2006.)  Berhow's

complaint, however, lists eleven different fictitious loans created by Seymour and the checks

cashed by Seymour for each loan.  The total of these checks is $43,500, which is $100 less

than the amount that Batia determined was the amount of loans created and checks cashed by

Seymour in Berhow's name.  Berhow does not provide any evidence that tends to show that

her loan accounts were not credited, or that she was not credited the appropriate amount.  The

9

Bank, on the other hand, provided an affidavit from Greg Batia in which he stated that Berhow's loan accounts were credited with $51,789.00.  Because Berhow has failed to show otherwise, she has failed to show the existence of a material fact question on the issue of whether she has been made whole.[1]  For this reason, the Bank is entitled to judgment as a matter of law.

As the Court determined above, Berhow's claims are displaced by § 75-3-420.  The Court will address them, however, in the alternative as though they have not been displaced.

MENTAL ANGUISH:

Berhow "requests partial summary judgment holding that mental anguish shall be an element of compensatory damages to be awarded in this case."  (Pl.'s Br. in Supp. of Mot. for Partial Summ. J., p. 4.)  In support of her contention, Berhow provided an affidavit in which she describes the mental anguish she suffered as follows:

> I have experienced mental and emotional distress both prior to and after being told about the fraud in my accounts.  Prior to being told, I was concerned, worried, and distressed over my indebtedness which unknown to me, I really did not owe.  After being told, I was very disturbed, angry, and distrustful of others and lost sleep.

(Berhow Affid., ¶ 8, Ex. G., Pl.'s Mot. for Partial Summ. J.)

---

[1]In a case arising out of the same misconduct by Seymour, Judge Clark concluded that the plaintiff had been made whole.  He aptly reasoned in *Williams v. The Peoples Bank*, No. A2401-04-146 (Cir. Ct. Harrison County 1st Jud. Dist. Mar. 8, 2006) as follows:

> Plaintiff's problem is that he has been fully compensated.  The Plaintiff was never entitled to the fraudulent loan amounts.  Because the Bank never owed Plaintiff an obligation on the fraudulent loan amounts, Plaintiff's right to enforce the fraudulent amounts is non-existent.  *A fortiori*, there is no reason to give any additional remedy to Plaintiff.

*Williams*, No. A2401-04-146, slip. op. at 12 (Cir. Ct. Harrison County 1st Jud. Dist. Mar. 8, 2006).

10

The Bank contends that Berhow's affidavit is insufficient "to support an instruction or award of damages for emotional distress."  (Defs.' Br. in Resp. to Pl.'s Mot. for Partial Summ. J., p. 19.)   The Bank characterizes Berhow's sleeplessness and worry as mere discomfort which is insufficient for an award of damages for emotional distress.

As the Mississippi Supreme Court has held, "[m]ental anguish is a nebulous concept and requires substantial proof for recovery."  *Wilson v. Gen. Motors Acceptance Corp.*, 883 So.2d 56, 64 (Miss. 2004), *quoting Morrison v. Means*, 680 So.2d 803, 805 (Miss. 1996).  The Mississippi Supreme Court has also recognized that  "vague testimony about loss of sleep and worry caused by the [conduct of the defendant] was insufficient to support an instruction or an award of damages for emotional distress."  *Wilson*, 883 So.2d at 65, *quoting Adams v. U.S. Homecrafters, Inc.*, 744 So.2d 736, 744 (Miss. 1999).  In this case, Berhow's claim for mental anguish damages is based upon loss of sleep, worry and stress caused by Seymour's actions in obtaining loans in her name.  Berhow admitted that she did not seek "medical treatment as [sic] result of such emotional distress."  (Pl.'s Br. in Supp. of Mot. for Partial Summ. J., p. 4.) Based upon the court's holding in *Wilson* and *Adams*, Berhow's vague testimony concerning her loss of sleep, worry and stress is simply insufficient to support an instruction or an award for mental anguish damages.  Berhow's motion must therefore be denied, and the Bank's motion should be granted.

FIDUCIARY DUTY:

Berhow contends that Seymour was in a position of trust, and "that she depended on him to keep accurate records on her numerous loans."  (Pl.'s Br. in Supp. of Mot. for Partial Summ. J., p. 6.)  In support of her contention that Seymour was in a position of trust, Berhow

provided deposition testimony of the Bank president, Chevis Swetman, and of Seymour.
Based upon this position of trust, Berhow claims that she is entitled to judgment as a matter of
law that the Bank owed her a fiduciary duty.

The Bank denies that Berhow is entitled to summary judgment and instead contends
that it is intended to summary judgment on this issue.  According to the Bank, "the relationship
between a creditor and debtor is not a fiduciary one as a matter of law."  (Defs.' Br. in Supp. of
Resp. to Mot. for Partial Summ. J., p. 26, *citing Burgess v. Bankplus*, 830 So.2d 1223 (Miss.
2002); *Merchants & Planters Bank of Raymond v. Williamson*, 691 So.2d 398 (Miss. 1997)).

The Mississippi Supreme Court has described a fiduciary relationship as follows:

> A "fiduciary relationship" is "a very broad term embracing both technical
> fiduciary relations and those informal relations which exist wherever one person trusts
> in or relies upon another." *Lowery v. Guar. Bank & Trust Co.,* 592 So.2d 79, 83
> (Miss.1991). A fiduciary relationship "may arise in a legal, moral, domestic, or
> personal context, where there appears 'on the one side an overmastering influence or, on
> the other, weakness, dependence, or trust, justifiably reposed.' " *Id.* (*citing Miner v.
> Bertasi,* 530 So.2d 168, 170 (Miss.1988); *In re Estate of Haney,* 516 So.2d 1359
> (Miss.1987)). *Lowery* stands for the proposition that an insurance carrier owes a certain
> level of fiduciary duty to its clients. *First United Bank of Poplarville v. Reid,* 612 So.2d
> 1131, 1138 (Miss.1992). A fiduciary relationship "arises only if the activities of both
> parties goes beyond their operating on their own behalf and the activity is for the
> benefit of both." *Carter Equip. Co. v. John Deere Indus. Equip. Co.,* 681 F.2d 386, 391
> (5th Cir.1982). A fiduciary relationship "need not be created by contract[;] it may arise
> from an informal relationship where both parties understand that a special trust and
> confidence has been reposed." *Lowery,* 592 So.2d at 84.

> However, "ordinarily a bank does not owe a fiduciary duty to its debtors and
> obligors under the UCC." *Peoples Bank & Trust Co. v. Cermack,* 658 So.2d 1352, 1358
> (Miss.1995), *overruled on other grounds by Adams v. U.S. Homecrafters Inc.,* 744 So.2d
> 736 (Miss.1999). "This Court has never held that the relationship between a mortgagor
> and mortgagee is a fiduciary one." *Hopewell Enters., Inc. v. Trustmark Nat'l Bank,* 680
> So.2d 812, 816 (Miss.1996). An arms length business transaction involving a normal
> debtor-creditor relationship does not establish a fiduciary relationship. *Id.* This Court
> "has repeatedly held that the power to foreclose on a security interest does not, without
> more, create a fiduciary relationship." *Gen. Motors Acceptance Corp. v. Baymon,* 732

So.2d 262, 270 (Miss.1999).  Simply put, "a mortgagee-mortgagor relationship is not a fiduciary one as a matter of law." *Hopewell Enters.,* 680 So.2d at 816.

*Burgess v. Bankplus*, 830 So.2d 1223, 1227-28 (Miss. 2002).  In this case, Berhow claims that because Seymour was in a position of trust and because she relied upon Seymour to manage her loans, the Bank owed her a fiduciary duty.  The Court does not agree.  Berhow has provided no evidence to show that their relationship was anything other than a normal debtor-creditor relationship.  Because she has failed to show the existence of a fiduciary relationship, Berhow is not entitled to summary judgment on this issue.  The Bank, on the other hand, is entitled to judgment as a matter of law on this claim.

VICARIOUS LIABILITY FOR COMPENSATORY DAMAGES:

Berhow contends that "[t]he test for whether the bank is vicariously liable for compensatory damages is whether Seymour committed these wrongful acts in the line and scope of his employment."  (Pl.'s Br. in Support of Mot. for Partial Summ. J., p. 2, dated Dec. 16, 2004.)  Based upon the following, Berhow contends that she has met her burden in showing that Seymour was acting within the course and scope of his employment at the time he committed fraud:

> It is undisputed that Ralph Seymour committed his fraudulent conduct while performing his daily duties and activities as a Peoples Bank loan officer, vice president and manager of the bank's headquarters office in downtown Biloxi.  Seymour testified he committed fraud as he was sitting at his desk in the bank's main lobby, a few feet from and in plain view of officers, tellers and his secretary.  He states he was 20 feet from his immediate supervisor, Wes Fulmer, 50 feet from Executive Vice President Andy Carpenter, and 70 feet from President Chevis Swetman.  Chevis Swetman confirmed under oath that Seymour accomplished his fraud over four years, on hundreds of occasions, utilizing the very documents he was authorized to use and while performing loan duties he was authorized to perform.  While the bank, of course, did not authorize Seymour to commit fraud, it did authorize him to process loans–the exact job duty he used to prepare fraudulent documents.

(Pl.'s Br. in Support of Mot. for Partial Summ. J., p. 2, dated Dec. 16, 2004.)  In support of her

contention, the Plaintiff offers the deposition of testimony of Ralph Seymour and Chevis

Swetman.[2]

      The Peoples Bank contends that for Berhow to recover from the Bank, she must show

that Seymour was acting within the course and scope of employment when he committed the

tortious acts.  According to the Bank, "when Seymour stole money from the Bank he was not

acting in furtherance of the Bank's business but was acting in furtherance of his own

purposes–to support his gambling addiction."  (Bank's Br. in Supp. of Defs.' Mot. for Summ.

J., p. 5, filed Apr. 25, 2005.)  The Bank contends that "Seymour converted the Bank's funds in

furtherance of his own purpose, not in furtherance of the Bank's business of making a profit

while providing a service to its customers."  (Bank's Br. in Supp. of Mot. for Summ. J., p. 7.)

The Bank supports its position by citing Seymour's deposition testimony as follows:

> First of all, I needed and I wanted my money for my gambling addiction, plus each and
> every time one of these loans matured, I needed money to put a small 10% token down
> payment, principal reduction plus pay the interest on the loan to have it renewed.

(Bank's Br., p. 7, *citing* Dep. of Seymour, 49:20-25, Ex. F., Defs.' Mot. for Summ. J., filed

Apr. 25, 2005.)  The Bank also provided the following testimony from Seymour:

> When Seymour was questioned as to what he told the Bank when first confronted with
> discrepancies between what he had said and what a bank customer had said, he testified
> that his immediate response was that he had a gambling problem:
>
> > Q.  What did you tell Mr. Carpenter [executive vice-president of the Bank]?
> > A.  I had a gambling problem.

Depo. Ralph Seymour 62:5-6 (Aug. 12, 2004), Ex. F.  Seymour further testified that no

---

[2]Defendant Seymour filed a motion to strike the deposition of Chevis Swetman, which the Court
will decide by separate order.

one at the Bank was aware of his gambling addiction:

> Q.  Did anybody at the bank know about your gambling addiction?
> A. Not that I'm aware of.

Depo. Ralph Seymour 79:14-15 (Aug. 12, 2004), Ex. F.

(Bank's Br. in Supp. of Mot. for Summ. J., pp. 7-8.)  For these reasons, the Bank contends

that Seymour's actions were beyond the course and scope of employment.

Mississippi law on the issue of vicarious liability under the doctrine of respondeat

superior is well established as follows:

> An employer is liable for the torts of his employee only when they are committed
> within the scope of employment.  To be "within the scope of employment," the act
> must have been committed in the course of and as a means to accomplishing the
> purposes of the employment and therefore in furtherance of the master's business.  Also
> included in the definition of "course and scope of employment" are tortious acts
> incidental to the authorized conduct.  Stated another way, a master will not be held
> liable if the employee "had abandoned his employment and was about some purpose of
> his own not incidental to the employment."  That an employee's acts are unauthorized
> does not necessarily place them outside the scope of employment if they are of the
> same general nature as the conduct authorized or incidental to the conduct.

*Adams v. Cinemark USA, Inc.*, 831 So.2d 1156, 1159 (Miss. 2002) (internal citations omitted).

Just recently, the Mississippi Supreme Court cited § 228 Restatement (Second) of Agency

(1958), which provides the following test for determining whether an employee was acting

within the scope of employment:

> Conduct of a servant is within the scope of employment if, but only if:
>
> (a) it is of the kind he is employed to perform;
>
> (b) it occurs substantially within the authorized time and space limits;
>
> (c) it is actuated, at least in part, by a purpose to serve the master. . . .

*The Commercial Bank v. Hearn*, No. 2004-IA-02095-SCT, 2006 WL 60768, at *6 (Miss. Jan.

15

12, 2006), *quoting* Restatement (Second) of Agency (1958); *citing Marter v. Scott,* 514 So2d

1240, 1242-43 (Miss. 1987).  The court also noted that "[t]he pertinent question is whether [the

employee] was engaged in the course and scope of his employment while [performing the

activity]."  *Hearn*, 2006 WL 60768, at *6.  Therefore, in this case, to survive the Bank's

summary judgment, Berhow must produce evidence to create a fact question on whether

Seymour's conduct in stealing money from the Bank was the kind of work that he was

employed by the Bank to perform, and that Seymour's conduct in stealing money was done in

part to serve the Bank.

  As noted above, Berhow supports her contention that Seymour was acting within the

scope of employment with Seymour's admission that his fraudulent conduct was committed

during normal banking hours and in close proximity to other Bank employees and supervisors

at the Bank.  In addition, Berhow contends that Seymour, as a senior loan officer at the Bank,

was trained and authorized to make loans.  In making loans, whether fictitious or legitimate,

Seymour was acting within the scope of his employment.  This evidence, however, is

insufficient to show that he was acting within the scope of his employment.  *Hearn*, 2006 WL

60768, at *6.  Seymour admitted that he stole money from the Bank for purely personal

reasons–to support his gambling addiction.  He also testified that to his knowledge, no one at

the Bank was aware of his conduct.  Berhow has failed to show that Seymour's conduct in

stealing from the Bank was the kind of work that he was employed to perform, and that his

conduct was done at least in part to serve the bank.  For this reason, Berhow has failed to show

that she is entitled to summary judgment on this claim.  Instead, the Bank is entitled to

judgment as a matter of law on the claim of vicarious liability.  Likewise, because Seymour

was acting outside the scope of his employment, the Bank is entitled to judgment as a matter of

law on Berhow's claim of negligent supervision.  *Slaydon v. Hansford*, 830 So.2d 686, 689

(Miss. Ct. App. 2002); *Odier v. Sumrall*, 353 So.2d 1370, 1372 (Miss. 1978).

PUNITIVE DAMAGES:

Berhow seeks partial summary judgment on the Bank's vicarious liability for punitive

damages for Seymour's conduct.  As the Court determined above, however, Berhow has failed

to show that Seymour was acting within the scope of his employment when he committed the

fraudulent activities.  Therefore, the Bank is not vicariously liable to Berhow for punitive

damages as a result of Seymour's actions.  The Bank is entitled to judgment as a matter of law

on this issue.

Berhow also claims that she is entitled to "partial summary judgment holding as a

matter of law that the undisputed evidence produced herein entitles the Plaintiff to go to the

jury on the issue of gross negligence."  (Pl.'s Br. in Supp. of Mot. for Partial Summ. J., p. 6.)

In support of her contention, Berhow provided an affidavit and deposition testimony of

Michael J. Woody, "a consultant in banking safety and soundness."  (Pl.'s Br., p. 7.)  In

addition, Berhow contends that the Bank has failed to provide any evidence that "it acted

reasonably over the four years and hundreds of fraudulent transactions."  (Pl.'s Br., p. 7.)

The Bank disagrees.  According to the Bank, "punitive damages are not warranted

because the Bank did not have notice of Seymour's criminal acts and because it took swift and

proper action upon discovery of Seymour's fraudulent activity."  (Defs.' Br. in Supp. of Mot.

for Summ. J., p 13.)

MISS. CODE ANN. § 11-1-65(1)(a) requires that the plaintiff prove by clear and

convincing evidence that the defendant "acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud." MISS. CODE ANN. § 11-1-65(1)(a). The statute explicitly provides that the court must "initially determine whether the particular facts of a case merit the submission of the issue of punitive damages to the jury. *Alpha Gulf Coast, Inc. v. Jackson*, 801 So.2d 709, 733 (Miss. 2001), *citing* MISS CODE ANN. § 11-1- 65(1)(d) (other citations omitted). In deciding whether to submit the issue to the jury, the court should decide "whether, under the totality of the circumstances and viewing the defendant's conduct in the aggregate, a reasonable, hypothetical trier of fact could find either malice or gross neglect/reckless disregard." *Jackson*, 801 So.2d at 733 (other citations omitted).

In this case, Berhow does not dispute that the Bank had no notice of Seymour's fraudulent activities. Berhow instead contends that the Bank should have known about Seymour's conduct, and that the Bank was grossly negligent in failing to discover his fraudulent conduct. However, according to the Bank, upon becoming aware of Seymour's criminal activities, the Bank promptly took corrective action. As noted above, Berhow is required to show by clear and convincing evidence that the Bank "acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud." MISS. CODE ANN. § 11-1-65(1)(a). The only evidence provided by Berhow in support of her contention that the Bank acted with gross negligence is the testimony of Michael J. Woody. However, the Court has by separate order determined that his opinion is unreliable and irrelevant, and therefore inadmissible. Berhow has produced no additional evidence of conduct on the part of the Bank from which a trier of fact could find

malice, gross negligence or reckless disregard.  For this reason, Berhow's motion on this issue

should be denied, and the Bank's motion should be granted.

C<small>LAIMS</small> A<small>GAINST</small> R<small>ALPH</small> S<small>EYMOUR</small>:

Berhow claims that "Seymour should be adjudicated liable as a matter of law for

compensatory damages and punitive damages to Plaintiff Mary Berhow for the fraud and

forgery done to her.  Berhow argues that because Seymour admitted that he committed fraud

"as to" Berhow, she is entitled to recover.  Berhow also contends that the Bank has admitted

that Seymour committed fraud.  In support of her contention, Berhow provided the testimony

of Seymour, and the Peters and Associates Claims Analysis, which itemizes the claimed loan

losses.  In addition, Berhow provided her own affidavit in which she stated that Seymour had

defrauded her.

Seymour denies that Berhow is entitled to partial summary judgment on the issues of

compensatory and punitive damages.  Seymour contends that Berhow cannot establish the

requisite elements of a fraud claim.  Specifically, Seymour argues that Berhow cannot show

that he made a misrepresentation to her and that she relied upon such misrepresentation.  In

addition, Seymour contends that Berhow has been made whole, and therefore, cannot recover

additional damages.  Lastly, Seymour claims that Berhow cannot show that she is entitled to

punitive damages because she cannot show that Seymour committed fraud against her, and

even if she could, she cannot show any proof of injury.

As the Court determined above, Berhow's negligence claims are displaced by

§ 75-3-420.  In addition, insofar as these claims are concerned, Berhow has been made whole.

She is therefore not entitled to additional compensatory damages.  To the extent that she has

asserted a fraud claim against Seymour, then Seymour must show the existence of a material

fact question on Berhow's claims against him.  Seymour claims that although he pled guilty to

bank fraud, he denies defrauding Berhow.  Specifically, he denies making a misrepresentation

to her.  Berhow has failed to identify a misrepresentation to her from Seymour.  For this

reason, Berhow is not entitled to summary judgment on her claims against Seymour.

**IT IS THEREFORE ORDERED AND ADJUDGED,** that the Plaintiff's Motion for

Partial Summary Judgment on Issues of Law Concerning Liability [42] should be and is hereby

**DENIED.**

**IT IS FURTHER ORDERED AND ADJUDGED,** that the Motion of Defendants, the

Peoples Bank and Peoples Financial Corporation for Summary Judgment [89] should be and is

hereby **GRANTED.**

**SO ORDERED AND ADJUDGED** this the 28th day of March, 2006.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE

20